415 S.E.2d 610

**Fred SAMPSON and Pat Sampson, Jim Wolfe and Lou Wolfe, Tony Alston, Bob Eads and Joan Eads, John Hager and Aileen Hager, R.S. Berger, and Phil Edwards, Plaintiffs Below, Appellees,**

v.

**Donald KARNES, Mayor of the City of Nitro, and Hack's Mobile Homes, Inc., a West Virginia Corporation, Defendants Below, Appellants.**

**No. 20266.**

Supreme Court of Appeals of
West Virginia.

Submitted Jan. 28, 1992.
Decided March 20, 1992.

---

Michael A. Braun, Smith & Braun, Charleston, for appellees.

Philip Gaujot, Charleston, for appellant, Donald Karnes, Mayor.

William A. Tantlinger, Charleston, for appellant, Hack's Mobile Homes, Inc.

PER CURIAM:

This is an appeal by Donald Karnes, the Mayor of the City of Nitro, West Virginia, and Hack's Mobile Homes, Inc., a West Virginia corporation, from an order entered by the Circuit Court of Kanawha County on October 29, 1990. That order enjoined Hack's Mobile Homes, Inc., from using a parcel of real estate located in the City of Nitro in such a manner as to violate the zoning ordinance of the City of Nitro. The apparent effect of the order is to enjoin Hack's from using the parcel for the operation of a mobile home sales lot. On appeal, the appellants claim that the parcel of real estate was, and is, properly and validly zoned for mobile-home-sales use, that Hack's should be allowed to operate a mobile home sales lot on it, and that the circuit court's ruling was erroneous. After reviewing the documents filed and the questions presented, this Court agrees with the appellants' assertions.

On March 17, 1959, the City of Nitro adopted a zoning ordinance and an accompanying zoning map. The ordinance provided that real estate located "along" state and federal highways was zoned "B–1", a designation that allowed use for a trailer sales lot. On the zoning map adopted in 1959, the parcel in issue in the present case, a parcel which runs contiguous to Route 25, a state highway, on the south and which extends northward to Hillside Drive on the north, was designated B–1. Hillside Drive was not, and is not, a state or federal highway. The parcel in 1959 was bisected by an alley which ran parallel to Route 25 and to Hillside Drive.

In the Fall of 1988, the City Council of the City of Nitro adopted an ordinance, designated Ordinance 88–9, which abandoned and discontinued as a public way the alley which bisected the parcel in question. Thereafter, in November, 1988, appellant Hack's Mobile Homes, Inc., purchased the property in question and opened a mobile home sales lot.

The appellees, who are residents and property owners along the north side of Hillside Drive, and who did not want a mobile home sales lot across the street

from their homes, instituted this action to obtain a declaratory judgment that the property in question was not properly zoned for use as a mobile home sales lot and to obtain injunctive relief to prohibit the use of the property as such a lot. In their complaint they alleged that, in 1959, it was the recommendation of the Nitro Planning Commission that parcels located on the northerly and southerly sides of Hillside Drive be classified as residential, and that through "mistake or inadvertence," the property located on the southerly side of Hillside Drive was classified as "B–1". They further alleged that if Hack's Mobile Homes, Inc., was permitted to use the portion of the property adjoining Hillside Drive as a mobile home lot, they would suffer irreparable damage and harm in the devaluation of their property.

An answer was filed by the appellants, and following the filing of the answer, the appellees moved for summary judgment. A hearing was conducted on the motion for summary judgment on October 5, 1989, and subsequently the parties submitted memoranda on the questions presented. On October 29, 1990, the court granted the appellees the summary judgment which they sought.

In granting summary judgment, the court did not address the question of whether the portion of the property in question along Hillside Drive was by "mistake or inadvertence" zoned "B–1", as alleged by the appellees. Instead, the court noted that Hillside Drive was not a state or federal highway, that Route 25 was such a highway, and that under the City of Nitro's zoning ordinance, only properties located along a state or federal highway could be used for purposes such as a mobile home sales lot. The court found that in the Fall of 1988, by Ordinance 88–9, the City of Nitro had abandoned the alleyway which bisected the property in question. The court concluded that the closing of the alley did not affect or modify the zoning ordinance and that if the intention in closing the alley was to change the zoning ordinance, such was not done in compliance with the requirements. The court then enjoined the appellant Hack's Mobile Homes,

Inc., from using the portion of the property in question abutting Hillside Drive as a mobile home sales lot and ordered the appellant Mayor of the City of Nitro and other appropriate officials to enforce the zoning ordinance in accordance with the court's order. Overall, the court apparently concluded the alley which bisected the parcel in question actually divided it into two portions for zoning purposes and that while the portion which was adjacent to Route 25 was properly zoned B–1, the portion north of the alley which was adjacent to Hillside Drive could not be zoned "B–1", even if the alley bisecting the parcel was legally abandoned.

In the present proceeding, the appellants claim that the circuit court erred in failing to hold that the parcel of property in issue, in its entirety, has always been available for use as a mobile home sales lot. They also, by implication, claim that the circuit court erred in enjoining the use of the property as a mobile home sales lot.

■ At the onset, this Court notes that it has rather consistently recognized that: "The enactment of a zoning ordinance of a municipality being a legislative function, all reasonable presumptions should be indulged in favor of its validity." Syllabus point 3, *G–M Realty v. City of Wheeling,* 146 W.Va. 360, 120 S.E.2d 249 (1961). *See also, Town of Stonewood v. Bell,* 165 W.Va. 653, 270 S.E.2d 787 (1980). The Court has also recognized that: "Where the complaining party has failed to show that a municipal ordinance, properly adopted, is arbitrary or unreasonable, this Court will not overrule city authorities in the exercise of their legislative function." Syllabus point 4, *Town of Stonewood v. Bell, Id.*

■ In the present proceeding, the appellees take the position that the wording of the zoning ordinance must be the ultimate determinate of whether the property in question along Hillside Drive is or can be zoned "B–1" so as to allow its use as a mobile home lot. Their arguments focus on the meaning of the word "along" as used in the context of "along a state or

federal highway" in the 1959 zoning ordinance. They basically argue that the word was meant to mean only immediately adjacent to a state or federal highway and that it cannot be construed to extend the zoning to Hillside Drive.

In any proceeding to construe or determine the meaning of a legislative enactment, which, as previously indicated in syllabus point 3 of the *G–M Realty* case, a zoning ordinance is, the critical question is what was the intent of the legislative body. *See, e.g., Gant v. Waggy,* 180 W.Va. 481, 377 S.E.2d 473 (1988); *State ex rel. Fetters v. Hott,* 173 W.Va. 502, 318 S.E.2d 446 (1984); *Woodell v. Dailey,* 160 W.Va. 65, 230 S.E.2d 466 (1976).

In the zoning area, a leading authority, E.C. Yokley, in his treatise *Zoning Law and Practice* § 9–5 (4th ed. 1978) has indicated that an important feature of any zoning program is the adoption of a land use map. Yokley states:

> Apart from any requirement in the enabling statute, the attachment of the land use map of the affected community delineating the boundaries of the various use districts in the ordinance forms an indispensable adjunct of the ordinance itself....

See, *State ex rel. Weiks v. Town of Tumwater,* 66 Wash.2d 33, 400 P.2d 789 (1965); *City Council of Augusta v. Irvin,* 109 Ga.App. 598, 137 S.E.2d 82 (1964); *Moon v. Smith,* 138 Fla. 410, 189 So. 835 (1939).

In the present case, contemporaneously with adopting the zoning ordinance in issue, the City Council of the City of Nitro adopted a zoning map. That zoning map showed that not only the area immediately contiguous to Route 25 was zoned "B–1", but that the part of the block in question in the present case, extending from the alley to Hillside Drive, was zoned "B–1".

Rather clearly, the term "along" a federal or state highways, as used in the zoning ordinance, was not defined further.

From the fact that the zoning map adopted contemporaneously with the adoption of the zoning ordinance showed that the whole of the land in issue in the present case was designated "B–1", this Court believes that the city, in adopting the zoning ordinance, intended the word "along" to have a broader meaning than that asserted by the appellees, and intended that the whole area in question in the present case be deemed to be "along" a state or federal highway and intended it to be zoned "B–1". The fact that it was originally so zoned was, in effect, admitted by the appellees when they stated in their complaint:

> That although it was the recommendation of the Nitro Planning Commission that parcels located on the northerly and southerly side of Hillside Drive be classified as residential, through mistake or inadvertence, the property located on the southerly side of Hillside Drive was classified a "B–1".

Given these circumstances, this Court concludes that the term "along" a state or federal highway, as used in the zoning ordinance insofar as it relates to the property in question in the present case, must be construed and interpreted not only as meaning land immediately adjacent to Route 25, but all that land in question, extending as far back as Hillside Drive.

Overall, in the present case the appellees have not shown that the City of Nitro was arbitrary or unreasonable in adopting the 1959 zoning ordinance, and the Court believes that the City, in adopting the 1959 ordinance, intended that the portion of the property in question adjoining Hillside Drive be zoned "B–1", a classification which allows use of the property as a mobile home sales lot. Under these circumstances, this Court concludes that the trial court erred in enjoining the appellants from allowing the use of the parcel in question as a mobile home sales lot.[1]

---

**1.** The Court notes that the appellees argue that the action of the City of Nitro in closing the alley which ran across the property was improper if the closure changed possible use of the property under the zoning ordinance. The Court believes this is a red herring.

As previously indicated, this Court has found that, under the ordinance as adopted, the property lying between the alley and Hillside Drive was originally and has continued to be zoned "B–1". In this Court's view, the vacating of the alley in no way affected the zoning of the prop-

For the reasons stated, the judgment of the Circuit Court of Kanawha County is reversed insofar as it enjoins Hack's Mobile Homes, Inc., from using the parcel of real estate in question in any manner consistent with "B–1" zoning.

Reversed.

erty, and insofar as the circuit court concluded that it did not affect or modify the zoning ordinance of the City of Nitro, the circuit court was correct.

The Court further notes that the appellees also argue that the vacating of the alley was improper in that the notice of the City's intention to do so was not given in the manner required by the zoning ordinance, and that the failure to give notice in accordance with the zoning ordinance rendered the vacating of the alley invalid.

Rather clearly, there was a valid purpose for vacating the alley other than changing the zon-

ing of the property. By bringing about the vacation of the alley, the owners of the property could use it and/or build upon it as one parcel of land, free from any right of the public to traverse the property.

Since, in this Court's view, the vacating of the alley had no effect whatsoever upon the zoning of the property, this Court believes that it was not incumbent upon the City of Nitro to give notice in accordance with the requirements of the zoning ordinance to vacate the alley.