424 S.E.2d 775

**LINCOLN COUNTY BOARD OF EDUCATION, Petitioner Below, Appellant,**

v.

**Martha ADKINS, Merle Manns, Margaret Ellis, Deborah Forth, Janice Adkins, Judy Mabe and Tola Hutchinson, Respondents Below, Appellees.**

**LINCOLN COUNTY BOARD OF EDUCATION, Petitioner Below, Appellant,**

v.

**Mary Lou SMITH, Respondent Below, Appellee.**

**No. 21000.**

Supreme Court of Appeals of West Virginia.

Submitted Oct. 6, 1992.

Decided Dec. 14, 1992.

Howard E. Seufer, Jr., Bowles, Rice, McDavid, Graff & Love, Parkersburg, for appellant.

Charles R. Garten, Charleston, for appellees.

BROTHERTON, Justice:

In this case, we are asked to define the term "regular school day" as it appears in West Virginia Code § 18A–4–14(2) (1988). This statute, which is also referred to as the "planning period statute," provides that:

> Every teacher who is regularly employed for a period of time more than one half the class periods of the regular school day shall be provided at least one planning period within each regular school day to be used to complete necessary preparations for the instruction of pupils. Such planning period shall be the length of the usual class period in the school to which such teacher is assigned, and shall be not less than thirty minutes. No teacher shall be assigned any responsibilities during this period, and no county shall increase the number of hours to be worked by a teacher as a result of such teacher being granted a planning period subsequent to the adoption of this section [March 13, 1982].

The appeal now before us involves two grievances filed by Lincoln County teachers pursuant to the West Virginia Education Employees Grievance Act, W.Va. Code § 18–29–1. One of these cases concerned Martha Adkins, who was one of seven Pleasant View Elementary School teachers in Lincoln County who filed a grievance in September, 1989.[1] The teach-

---

1. *Adkins v. Lincoln County Board of Education,*  West Virginia Education and State Employees

ers sought to have all of their daily planning periods scheduled during the part of the work day when students are present and engaged in instructional activities. They asked for compensation for those days when they had not received their planning periods within the instructional period of the work day.

The Lincoln County Board of Education (BOE) adopted Policy 8–07.00 in 1979–80, establishing an eight-hour work day for all teachers. On alternate weeks during the 1989–90 school year, teachers at Pleasant View Elementary School received their daily thirty-minute planning periods during a portion of the work day in which students were being instructed. This was possible because during this same time the teachers' students were being instructed by a traveling physical education teacher.

Budgetary constraints prevented the physical education teacher from visiting more often. In the weeks when this teacher didn't visit, it was impossible, with only existing staff, to schedule planning periods to occur during the instructional portion of the school day. However, teachers could choose to arrive at school before 8:00 a.m. and conduct their planning activities for thirty minutes every morning before instruction began. According to the BOE, few, if any, of the grievants took advantage of this opportunity and opted to stay at home instead. The BOE maintains that even if the teachers had taken time before classes in the morning for planning, no teacher's work day ever would have exceeded eight hours.

The other grievant involved in this appeal is Mary Lou Smith, a teacher at Guyan Valley High School in Lincoln County.[2] Her planning period was scheduled for the first class period of each day. However, on thirty-seven days during the 1988–89 school year, the school principal required Smith to substitute for absent teachers during the first class period when substitutes were not available or had not been called. The BOE states that on more than half of the occasions when Smith was asked to cover the first class period, substitutes were unavailable because of a financial crisis. After state-level budget reductions, the county school superintendent directed that substitutes be called only when an absence could not be covered by the available staff, which included the principal and assistant principal.

In her complaint, Smith asked for compensation above and beyond her daily eight hours of pay for each of the thirty-seven times she had to cover for an absent teacher. She also requested that the principal quit requiring her to substitute during the first class period.

The BOE argues that on those days when Smith was not able to utilize the first class period for planning purposes, she could have used available time either before or after classes to conduct her planning activities. Moreover, the BOE points out that Smith was never expected to work more than the eight hours for which she was paid each day, nor does she allege that she ever exceeded this limit.

In both the *Adkins* and *Smith* cases, level four hearing examiners concluded as a matter of law that the reference to a planning period "within each regular school day" in W.Va.Code § 18A–4–14(2) should be interpreted to mean that a planning period must occur during the instructional part of the work day, when students are present, regardless of the length of the maximum work day allowed by the county board of education.[3]

Grievance Board Docket No. 89–22–699 (December 28, 1989).

**2.** *Smith v. Lincoln Co. Board of Education,* West Virginia Education and State Employees Grievance Board Docket No. 89–22–544 (November 14, 1989).

**3.** At level one of the grievance procedure, the grievances were denied by the employees' school principals, who concluded that the statutory planning period can lawfully be scheduled to occur before or after the actual instructional day, as long as it occurs within the eight-hour work day which the Lincoln County Board of Education has authorized for its teachers.

The employees appealed to level two, where evidentiary hearings were held by an assistant superintendent of schools, and the grievances were denied.

The cases were consolidated on appeal, and the Circuit Court of Lincoln County affirmed both decisions.[4] While acknowledging the grievance board's inconsistency on the issue of when a teacher must have a planning period, the lower court found that because the statute requires that the planning period be as long as "the usual class period" and authorizes principals and assistant principals to assume "control of the class period and supervision of students during the time the teacher is engaged in the planning period," then the term "regular school day" is synonymous with "instructional day."

As a result of the circuit court's findings, the BOE was ordered to compensate the grievant in *Smith* for the thirty-seven times she was "denied her planning period" during the 1988–89 school year and to stop requiring her to give up her planning period during the instructional day. In *Adkins*, the BOE was ordered to give each grievant a daily uninterrupted planning period of at least thirty minutes during the instructional day.

Now on appeal to this Court, the BOE asserts that the planning period statute allows a county board to schedule a teacher's daily planning period so that it occurs during the paid and authorized eight-hour work day, but before that part of the work day when students are present for instruction. The BOE maintains that the term "regular school day" refers not to a specific portion of any day, but to the entirety of those days when school is in session. Thus, the BOE's primary argument is that "regular school day" is not ambiguous, but has a plain and ordinary meaning: a "school day" is simply a day when school is in session. We agree with the definition proposed by the BOE, and for the reasons set forth below, we reverse the decision of the Circuit Court of Lincoln County.

The BOE states that a practical reason for rejecting the lower court's definition of "regular school day" is because that interpretation suggests that even though teachers can be required to work before instruction commences and after it concludes, they cannot be directed to use the time before and after instruction for which they are being paid to meet the statutory planning period requirement. The BOE asks, "What are teachers to do during this period of time? Why would the legislature not want them to be able to use that time to plan?"

■ As we noted above, the circuit court based its decision, in part, on statutory language which provides that the planning period shall be the "length of the usual class period." However, the BOE submits that the plain meaning of this provision is not that the planning period must actually occur during a "usual class period." Instead, as this Court recognized in *Gant v. Waggy*, 180 W.Va. 481, 377 S.E.2d 473 (1989), the legislative purpose behind this provision was simply to ensure that the length of a teacher's planning period correlated with the length of the classes for which she was planning.[5]

A second statutory provision which apparently guided the lower court's decision to some extent was W.Va.Code § 18A–4–14(2), which authorizes principals and assistant principals to cooperate in implementing the statute, including, but not limited to, assuming control of the class period or supervision of students during the time the teacher is engaged in the planning period. The BOE maintains that § 18A–4–14(2) simply "fills a gap in the school laws by empowering principals and assistant principals to cover the classes themselves." The BOE explains that until this statute was enacted, there was no express statutory authority for administrators, rather than contracted teachers, to actually "take over" a teacher's class in such a situation. The

At level three, the Lincoln County Board of Education waived its right to decide the appeals, pursuant to W.Va.Code § 18–29–4(c).

**4.** West Virginia Code § 18–29–7 (1988) authorizes a circuit court to review a level four decision "upon the entire record made before the hearing examiner."

**5.** The issue in *Gant* was whether teachers are entitled to an uninterrupted daily planning period or whether instead, a board of education can require teachers to split the planning period into two shorter and non-consecutive periods of time.

BOE points out that the statute is silent on the issue of *when* a planning period should occur and thus, it was unnecessary for the lower court to interpret it as actually controlling the issue.

Indeed, other sources provide far more insight into this question of exactly what constitutes a "regular school day." The West Virginia Code of State Rules defines an "instructional day" as the "time allocated *within the work day* for the mastery of learning outcomes by students. The instructional day includes both regular and discretionary instructional time." W.Va. C.S.R. § 126–42–6.31 (emphasis added). A "work day", however, is defined as "time allocated for the instructional day and other activities such as homeroom, class changes, lunch, *planning periods*, and staff development that may not exceed eight (8) clock hours." W.Va.C.S.R. § 126–42–6.33 (emphasis added).

In addition to these definitions, several references to "school days" found in W.Va. Code §§ 18A–5–4, 18A–5–4a, and 18A–5–6 are also instructive, in that all suggest that a "school day" is simply a day when students attend classes. We also note that W.Va.Code § 18–5–15(a) describes the school term as being comprised of an employment term for teachers which includes an instructional term for students.

In this case, the circuit court agreed with the hearing examiner's conclusion that a "regular school day" is the same as an "instructional day," but we disagree. Instead, we find that the terms "work day" and "regular school day" are synonymous, each referring to the entirety of those days on which school is in session and students receive instruction.

As the BOE now points out, the Legislature is quite capable of referring to an "instructional day" as an "instructional day," should it choose to do so. Instead, W.Va.Code § 18A–4–14(2) states that teachers employed for more than one-half of the class periods of the *regular school day* shall be provided at least one planning period within each *regular school day*. "When a statute is clear and unambiguous and the legislative intent is plain, it is the duty of the courts to apply the statute in accordance with the legislative intent therein clearly expressed." Syllabus, *Gant v. Waggy*, 180 W.Va. 481, 377 S.E.2d 473 (1989).

Based upon the definitions in the West Virginia Code of States Rules and usage in other provisions of the Code, we find that a "regular school day" is a work day on which both teachers and students report to school and instructional activities take place. The "instructional day," during which actual teaching occurs, is merely a component of the larger "work day" or "regular school day." In light of these interpretations, we conclude that W.Va. Code § 18A–4–14(2) does not require that schedules be arranged so that a teacher's planning periods occur during the instructional portion of the work day.

Our conclusion is consistent with an April 28, 1983, interpretation by the State Superintendent of Schools, in which the issue now before us was addressed as follows:

> Can the planning period be scheduled for all personnel prior to the beginning of classes or after the students have left for the day?
>
> The answer appears to be yes, provided that the placement of the teacher's planning period does not in and of itself extend the length of the teacher's work day.

We have no basis upon which to dispute the State Superintendent's finding on this issue. " 'Interpretations of statutes by bodies charged with their administration are given great weight unless clearly erroneous.' Syl. pt. 4, *Security Nat'l Bank & Trust Co. v. First W.Va. Bancorp, Inc.*, 166 W.Va. 775, 277 S.E.2d 613 (1981)." Syl. pt. 3, *Smith v. Board of Education of County of Logan*, 176 W.Va. 65, 341 S.E.2d 685 (1985).

For the foregoing reasons, the Circuit Court of Lincoln County order is reversed.

Reversed.