## STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Alfredo Velasquez,**
**Defendant Below, Petitioner**

**vs) No. 13-1245** (Kanawha County 09-C-547)

**Mohammad Roohollahi,**
**Plaintiff Below, Respondent**

**FILED**

November 3, 2014

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Alfredo Velasquez, by counsel Rick F. Holroyd, appeals the Circuit Court of Kanawha County's "Final Order" entered on October 24, 2013, in which the circuit court found in favor of Respondent Mohammad Roohollahi in one of the claims raised in his civil action against petitioner. Respondent, by counsel Brenden D. Long, filed a response and also raised a cross-assignment of error challenging the circuit court's failure to award prejudgment interest on sums awarded to him below. Petitioner did not file a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

### Facts

Petitioner and respondent formed R&V Developers, LLC ("R&V"), on or about May 2, 2003, for the purpose of constructing an apartment complex. The Operating Agreement of R&V gave petitioner and respondent each fifty-percent ownership in the company. The Construction Agreement named R&V as the "Contractor" and petitioner as the "Owner," and was endorsed by petitioner and by respondent, on behalf of R&V, on June 4, 2004. The Framing Contract, between petitioner and Quality Builders, a company owned by respondent, was endorsed by the petitioner and respondent, on behalf of Quality Builders, on November 12, 2004.

The Construction Agreement required a fee of $65,000 to be paid by petitioner to R&V, which was then paid in full to respondent. The Framing Contract between petitioner and Quality Builders required a fee of $55,000, which was paid to respondent as owner of that company.

The parties opened a checking account under the title "R&V Developers, LLC/ Shamrock Villa" at the onset of the project to cover the finances for the development and construction of the apartment complex. During the years 2005 and 2006, a total of $672,855.71 was deposited into the account by petitioner, while $649,007.55 was paid out of the account. A total of 189

checks were drawn on the account. According to petitioner, the project was completed in March of 2006.

This appeal centers on respondent's claim that at some point during the project, petitioner requested that respondent pay for a portion of the labor and materials on the project, and respondent complied. Respondent filed suit against petitioner on March 27, 2009, after petitioner failed to reimburse him for these expenditures upon completion of the project. Specifically, the complaint alleged that during the project, petitioner informed respondent that he had become short of funds and requested that respondent advance his own personal funds to pay for labor and materials and that these funds would be repaid upon completion of the project.[1] Petitioner denied that he made such a request and filed his answer and a counter-claim[2] on or about April 17, 2009.

Following discovery, the case proceeded to a bench trial on August 19, 2013. At the conclusion of the trial, the circuit court found, in relevant part, that respondent was entitled to reimbursement for his out-of-pocket payment for labor and materials on the project. In this respect, the circuit court concluded as follows in its October 24, 2013, "Final Order:"

> At trial, the evidence presented provided that there was a lot of banking activity in the checking account throughout the construction period; however, at one period in time, the bank account had several overdrafts. Additionally, [petitioner] testified at trial that there was a time in which he was low on funds. [Respondent] presented further evidence of checks for material and labor labeled with the note, "Dr. Job."[3] The Court finds that [respondent] paid for labor and materials and that [petitioner] should have reimbursed [respondent] for those amounts in the amount of $52,715.30 for labor and $31,797.50 for materials. As such, the Court ORDERS [petitioner] to reimburse [respondent] $52,715.30 for labor and $31,797.50 for materials.

Petitioner now appeals to this Court.

**Discussion**

On appeal, petitioner raises two assignments of error. First, he argues that the circuit court erred in finding that respondent was entitled to reimbursement for the funds he expended

---

[1] Respondent also claimed that he was entitled to (1) additional compensation for design and development of the project; (2) lost business due to the failure of petitioner to reimburse him for labor and materials; and (3) reimbursement for mortgage interest payments. The circuit court denied these claims, and respondent does not challenge the denial in this appeal.

[2] In his counterclaim, petitioner alleged that between 2006 and 2007, respondent began other construction projects and used the charge accounts of petitioner to purchase building materials for these other projects without petitioner's permission. The circuit court denied petitioner's counterclaim.

[3] The circuit court's "Final Order" refers to petitioner as "Dr. Velasquez."

2

for labor and materials. Petitioner states that as support for his claim at trial, respondent presented several checks written on a Quality Builders account between 2005 and March of 2006. However, the copies of the checks presented at trial and in discovery showed only the front of the checks. Petitioner contends that without seeing the back, one cannot tell if the checks were actually presented for payment. Similarly, petitioner states that the invoices that respondent presented in support of his claim are suspect. Although respondent presented an invoice to the worker who performed the specific service(s), petitioner states that there was no evidence that respondent presented them to petitioner. Lastly, petitioner contends that respondent had other jobs going on at the same time as the apartment project and could have easily been confused as to the expenses he paid as they all flowed through Quality Builders.

> "In reviewing challenges to the findings and conclusions of the circuit court made after a bench trial, a two-pronged deferential standard of review is applied. The final order and the ultimate disposition are reviewed under an abuse of discretion standard, and the circuit court's underlying factual findings are reviewed under a clearly erroneous standard. Questions of law are subject to a *de novo* review."

Syl. Pt. 1, *Public Citizen, Inc. v. First Nat'l Bank of Fairmont,* 198 W.Va. 329, 480 S.E.2d 538 (1996). Upon our review of the record in this matter, including the bench trial transcript, we reject petitioner's first assignment of error. At trial, the circuit court properly found that petitioner presented no evidence to challenge the validity of the checks presented by respondent. As for the invoices related to the project, respondent testified that they were presented to petitioner at the time the project was completed in March of 2006. The invoices mirror the checks. Although the checks presented at trial showed only the front, respondent points out that in the five years this case was pending, petitioner never requested to see the backs of the checks. Importantly, both the checks and the invoices were admitted at trial as joint exhibits. Petitioner cannot now claim the circuit court erred in finding them to be genuine.

Petitioner's second assignment of error is that the circuit court erred in finding against him individually, as opposed to finding R&V liable. The circuit court made a factual determination that petitioner, as an individual, agreed to reimburse respondent for his out-of-pocket expenditures. Also, we believe petitioner misreads the Construction Agreement; it states that the Owner (petitioner), and not R&V, is responsible for all materials and subcontractor labor invoices. Lastly, the record fails to demonstrate that petitioner objected to respondent seeking relief against him individually. Accordingly, we see no error with respect to the circuit court finding against petitioner individually.

Turning now to respondents' cross-assignment of error, he argues that the circuit court erred by not awarding him prejudgment interest. As support, respondent relies on West Virginia Code § 56-6-31(a), which provides as follows:

> Except where it is otherwise provided by law, every judgment or decree for the payment of money, whether in an action sounding in tort, contract or otherwise, entered by any court of this State shall bear interest from the date thereof, whether it be so stated in the judgment or decree or not: Provided, That if the judgment or

decree, or any part thereof, is for special damages, as defined below, or for liquidated damages, the amount of special or liquidated damages shall bear interest at the rate in effect for the calendar year in which the right to bring the same shall have accrued, as determined by the court and that established rate shall remain constant from that date until the date of the judgment or decree, notwithstanding changes in the federal reserve district discount rate in effect in subsequent years prior to the date of the judgment or decree. Special damages includes lost wages and income, medical expenses, damages to tangible personal property and similar out-of-pocket expenditures, as determined by the court. If an obligation is based upon a written agreement, the obligation shall bear a prejudgment interest at the rate set forth in the written agreement until the date the judgment or decree is entered and, thereafter, the judgment interest rate shall be the same rate as provided for in this section.

Respondent's argument that West Virginia Code § 56-6-31(a) mandates an award of pre-judgment interest in this case ignores both the opening clause of the sub-section ("Except where it is otherwise provided by law . . .) and the fact that this is a contract case. As such, the pre-judgment interest mandate in § 56-6-31(a) does not apply; rather, the award of interest, if any, is to be made by the jury pursuant to West Virginia Code § 56-6-27. *See* Syl. Pt. 3, *Ringer v. John,* 230 W.Va. 687, 742 S.E.2d 103 (2013) ("In an action founded on contract, a claimant is entitled to have the jury instructed that interest may be allowed on the principal due, W.Va. Code, 56-6-27 [1923], but is not entitled to the mandatory award of interest contemplated by W.Va. Code 56-6-31 [1981], since this statute does not apply where the rule concerning interest is otherwise provided by law." Syl. Pt. 4, *Thompson v. Stuckey,* 171 W.Va. 483, 300 S.E.2d 295 (1983)); *See also City Nat'l Bank v. Wells,* 181 W.Va. 763, 384 S.E.2d 374 (1989) (holding that in contract cases, the right to prejudgment interest is dependent on West Virginia Code § 56-6-27, which leaves the determination to the jury.)

Because the present case sounds in contract, prejudgment interest was not mandatory; rather, it was left to the fact-finder's determination. In this case, the circuit court was the fact-finder and, based on the evidence presented, did not award respondent prejudgment interest. Based on the record, we see no reason to disturb that determination.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** November 3, 2014

**CONCURRED IN BY:**

Chief Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II

4